# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1137

_____

United States of America,

        Appellee,

v.

Byron Darren Butler,

        Appellant.

\* \* \* \* \* \* \* \* \* \*

Appeal from the United States
District Court for the Southern
District of Iowa.

_____

Submitted: October 23, 2009
Filed: February 9, 2010

_____

Before, COLLOTON, BENTON, Circuit Judges, and PIERSOL[1], District Judge.

_____

PIERSOL, District Judge.

After being indicted for being a Felon in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. § 922(g)(1), Defendant Byron Darren Butler moved to suppress all evidence obtained through a search and seizure conducted on September 12, 2007, by the Mid-Iowa Drug Task Force at a residence in which Defendant resided with a woman. The .40 caliber handgun which is the subject of the felon in possession of a firearm charge was discovered during this search. The motion

---

[1]The Honorable Lawrence L. Piersol, United States District Judge for the District of South Dakota, sitting by designation.

to suppress was denied and Defendant proceeded to a jury trial in which he was convicted of the felon in possession of a firearm charge. Defendant was sentenced to a term of imprisonment of 63 months.

On appeal Defendant challenges the district court's denial of his motion to suppress and the denial of his motion in limine to exclude evidence at trial. Defendant also challenges the sufficiency of the evidence to support his conviction and whether the district court was justified in sentencing him to 63 months of imprisonment. We affirm the district court[2] on all issues.

I. *Factual Background*

In September of 2007 there had been an ongoing investigation of Defendant by the Mid-Iowa Drug Task Force. On September 12, 2007, Officer David Powell from the Marshalltown, Iowa Police Department submitted an application for search warrant to search a house located at 107 South 5th Avenue which was possessed by Rachel Woodruff. The application asserted good reason and probable cause to believe that controlled substances, drug paraphernalia, drug related cash and documents, as well as firearms found in violation of Iowa law would be found at the home. The application specified Defendant, as well as any other person present and connected to drug activity at the house, as a person to be searched. In one paragraph in the two pages of specific information supporting the September 2007 application for the search warrant, mention is made of a 2004 search and seizure which resulted in Defendant being arrested for possession with intent to deliver marijuana. Although the search and seizure was ultimately suppressed and Defendant was never convicted for any offense related to the 2004 search and seizure, the September 2007 application does not advise of the same.

---

[2]The Honorable James E. Gritzner, Judge of the United States District Court for the Southern District of Iowa.

The September 2007 application states that on September 4, 2007, the Mid-Iowa Drug Task Force conducted a controlled buy using a confidential informant who went to the home of a Kenny Weston to buy crack cocaine. The application reports that the confidential informant advised the task force that Weston would probably leave on his bicycle to get the drugs from Defendant at an unknown location. Investigating officers then observed the confidential informant going into Weston's residence and leaving. The application reports that a short time later Weston was observed leaving on his bicycle and was followed to 107 South 5th Avenue where officers conducting surveillance "saw a subject consistent in appearance with [Defendant]." The application further states that Weston was then observed riding his bicycle back to his home. Although Weston left on a bicycle and was pulling a lawn mower behind him, the application makes no reference to the lawn mower. The application advises that Detective Powell met with the confidential informant who reported that Weston had sold crack cocaine to her.

A search warrant for the residence at 107 South 5th Avenue in Marshalltown, Iowa, was issued by a Magistrate of the Iowa District Court on September 12, 2007. Law enforcement officers on that date also executed a search warrant on an apartment linked to Defendant. No person, and only a small amount of furniture and personal items were found at this apartment. The officers also found in this apartment an energy bill in Defendant's name, approximately $90 under a mattress, what appeared to be residue of crack cocaine, and sandwich bags consistent with drug packaging.

While the search was conducted at the apartment, the search warrant in issue in this case was executed on the residence at 107 South 5th Avenue, a house owned by Defendant's girlfriend, Rachel Woodruff. Defendant and Rachel Woodruff were both in the home at the time the officers entered the house. At this residence a large quantity of marijuana, some scales and drug packaging were seized. Some of the marijuana was being dried in the bathtub and Rachel Woodruff was attempting to

flush some of it down the toilet. Bags of marijuana were also found in the upstairs bathroom closet, and another was found under the bed in the master bedroom.

A search of the bed in the master bedroom led to the discovery of a .40 caliber handgun between the mattress and the box spring on the south side of the bed and bedroom. The gun was loaded and the magazine had to be removed from the gun. One of the detectives on the task force testified at trial that in his experience and training he has found that persons involved in illegal drug trafficking often keep guns to keep from being robbed and to protect themselves. The officers also seized from the house a video monitor attached by a cable to a video camera. The detective also testified that such video monitors were commonly found where drugs are being sold.

On the north side of the master bedroom at 107 South 5th Avenue was a closet with purses and other women's items. On the south side of the master bedroom were baseball caps and other men's clothing. In addition, Defendant's wallet was found on the south side of the bed. Other items found on the south side of the master bedroom were videotapes of Defendant and Rachel Woodruff as well as Defendant and a woman other than Rachel Woodruff in intimate situations. One of the Government's witnesses, Candace Klaas, testified that she had been a friend of Defendant and had received drugs from him. Klaas testified that although she had had sex with Defendant at his apartment she did not believe he lived at the apartment, and that Defendant had told her he lived with his girlfriend.

## II. *Discussion*

*Denial of Suppression Motion*

Defendant relies upon *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978), in contending that the district court erred in denying his motion to suppress. The Supreme Court in *Franks v. Delaware* held that where a defendant makes a substantial preliminary showing that a false statement was knowingly and

intentionally, or with the reckless disregard for the truth, included by an affiant in a search warrant affidavit, and if the allegedly false statement is necessary to a finding of probable cause, the Fourth Amendment requires that a hearing be held at defendant's request. The Supreme Court in *Franks v. Delaware* further held that if, after such an evidentiary hearing, the defendant establishes by a preponderance of evidence that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the search warrant affidavit, and, with the affidavit's false material set to one side, the remaining content of the affidavit is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit. 438 U.S. at 155-156. The holding of *Franks v. Delaware* also applies to material that has been deliberately or recklessly omitted from a search-warrant affidavit. *See United States. v. Jacobs*, 986 F.2d 1231, 1234 (8th Cir. 1993). In the case at hand, the district court followed its practice of conducting a *Franks* evidentiary hearing and then determining after a record was made whether a *Franks* evidentiary hearing was warranted. The Government called and the Defense cross examined Officer Powell and another member of the task force and Defendant was given the opportunity to call witnesses at the hearing.

Defendant first contends that a *Franks* violation occurred because the supporting affidavit for the search warrant stated that Weston left on his bicycle to go to the house at 107 South 5th Avenue, but that the affidavit failed to state that Weston was pulling a lawnmower behind the bicycle. Defendant maintains that the delivery of a lawnmower is relevant in that the delivery of the lawnmower was a legitimate reason for Weston to travel to the house where Defendant was staying. Defendant next contends Patrol Office Powell recklessly stated that the controlled buy occurred on September 4, 2007, when the law enforcement reports state that the controlled buy occurred on either September 5 or 6, 2007. Defendant also complains about references in the affidavit to the 2004 investigation in which evidence was suppressed.

In reviewing a denial of a motion to suppress, we review the district court's factual determinations for clear error and its legal conclusions de novo. *United States v. Clarke*, 564 F.3d 949, 958 (8th Cir. 2009). A showing of negligence or innocent mistake is not enough to establish a *Franks* violation. The test for determining whether an affiant's statements were made with reckless disregard for the truth is whether, after viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported. *United States v. Clapp*, 46 F.3d 795, 801 n.6 (8th Cir. 1995). A showing of deliberate or reckless falsehood is "not lightly met." *United States v. Wajda*, 810 F.2d 754, 759 (8th Cir. 1987).

Officer Powell testified that he did not consider the fact about the lawnmower being pulled by Weston as a fact relevant to the investigation. The district court also found that considering the totality of the circumstances, Weston pulling the lawnmower to where Defendant was residing was of marginal relevance. Omissions of facts in a supporting affidavit do not constitute misrepresentations unless they cast doubt on the existence of probable cause. *United States v. Parker*, 836 F.2d 1080, 1083 (8th Cir. 1987).

The Government contended that the controlled buy actually occurred on September 5, 2007, although the search warrant application lists September 4, 2007, as the controlled buy date. Officer Powell testified and the district court accepted his testimony as true that the incorrect date on the application was the result of a typographical error. A mere typographical error does not establish a "deliberate falsehood," or a "reckless disregard for the truth," nor does it cast doubt on the affidavit's showing of probable cause to search the residence. *See, e.g., United States v. White,* 356 F.3d 865, 868-69 (8th Cir. 2004)(incorrect date typed on pre-printed form); *United States v. Edwards*, 994 F.2d 417, 425 (8th Cir. 1993).

The paragraph in the Affidavit for search warrant pertaining to the earlier investigation in 2004 which resulted in the suppression of evidence based on a stale application states:

> During the month of April 2004, the [task force] conducted another crack cocaine investigation involving [Defendant and two other individuals], all of who were living together at 602 E. Church St. in Marshalltown. During this investigation a search warrant was served at the residence. [The two other individuals] were both arrested for possession schedule II crack with intent to deliver after officers found a quantity of crack cocaine in their bedroom. [Defendant] was arrested for possession schedule I with intent to deliver after officers found 97 grams of marijuana in his bedroom.

The affidavit fails to advise that the 2004 search of Defendant Byron Butler was suppressed for being stale. The affidavit contained more than a dozen additional paragraphs of factual information implicating Defendant in illegal conduct. The district court accepted as true Officer Powell's testimony that he did not know that mention of previously suppressed evidence could not be included in a subsequent search application.

The district court concluded that if the challenged portions of the affidavit had been corrected, added, or omitted, the warrant still would have been supported by probable cause. We find no clear error in the district court's factual findings and conclude that no *Franks* violation occurred which would require suppression based on the challenged portions of the affidavit.

Defendant contends that even if the challenged portions of the affidavit were corrected, added or omitted, the application was still deficient in establishing probable cause for the issuance of a search warrant. Defendant bases his argument on his contentions that the information supplied by the confidential informant and contained in the affidavit was not corroborated by independent evidence and that it was not

established that the confidential informant had a track record of supplying reliable information.

As a reviewing court, we pay "great deference" to the probable cause determinations of the issuing judge or magistrate, and limit our inquiry to discerning whether the issuing judge had a substantial basis for concluding that probable cause existed. *See Illinois v. Gates*, 462 U.S. 213, 236, 103 S. Ct. 2317, 76 L. Ed.2d 527 (1983). When a confidential informant provides information in support of a search warrant, the issuing magistrate considers the informant's reliability and the basis of his knowledge. *United States v. Lucca*, 377 F.3d 927, 933 (8th Cir. 2004). The totality of the circumstances analysis applicable to probable cause determinations, however, does not mandate that both factors be present before a warrant may issue. *See United States v. Anderson*, 933 F.2d 612, 615 (8th Cir. 1991). The information from a confidential informant is sufficiently reliable if it is corroborated by other evidence, or if the confidential informant has a history of providing reliable information. *See United States v. Williams*, 10 F.3d 590, 593 (8th Cir. 1993).

The information from the confidential informant who implicated Defendant and who was one of four confidential informants referenced in the affidavit, was corroborated by surveillance officers. The surveillance officers witnessed Weston making the bicycle trip to the residence at which Defendant resided and saw a subject consistent in appearance with Defendant at that residence at the time Weston was at the residence before bringing back drugs to the confidential informant as part of a controlled buy. In a fill-in-the blank portion of the application for the search warrant, Officer Powell advised that this confidential informant had supplied information multiple times in the past and information supplied by this confidential informant had led to eight arrests, and the discovery and seizure of stolen property, drugs or other contraband. The information provided by this confidential information was sufficiently corroborated and a sufficient track record of the confidential informant was provided to support the district court's finding of probable cause. The district

court had a substantial basis for concluding that probable cause existed, and we affirm the district court's order denying Defendant's motion to suppress.

*Admission of Evidence of Drug Paraphernalia*

Defendant contends that the prejudicial effect of admitting evidence of drug paraphernalia at his trial substantially outweighed its probative value and that the district court erred in admitting this evidence. We review evidentiary rulings of the district court under an abuse of discretion standard. *United States v. Phelps*, 168 F.3d 1048, 1054 (8th Cir. 1999). We give great deference to the district court's determination in balancing the prejudicial effect and probative value of evidence of other crimes, and reverse only when the evidence admitted clearly has no bearing on any issue involved. *United States v. Simon*, 767 F.2d 524, 526 (8th Cir. 1985).

Prior to trial the Government gave notice under FED. R. EVID. 404(b) that it intended to present during its case-in-chief a number of items, including marijuana and items consistent with drug use, which were discovered during the execution of the search warrants on September 12, 2007. Before the trial began in Defendant's case the district court held a hearing which addressed a number of matters including Defendant's motion in limine to exclude the evidence concerning drug transactions. The Government argued that the evidence of drug trafficking pertaining to Defendant was relevant to his motive to possess the gun that was found under the bed and that this evidence also established the background of the case. After considering the holding in *United States v. Claybourne*,[3] and balancing the prejudicial effect and probative value of the evidence, the district court denied the motion in limine requesting the exclusion of the evidence concerning drug transactions but advised that

---

[3]In *United States v. Claybourne*, 415 F.3d 790 (8th Cir. 2004), a panel of this Court held that evidence that drug paraphernalia was present in the bedroom where a firearm was found was admissible in a prosecution for being a felon in possession of a firearm to establish motive, opportunity, intent, and plan to possess the firearm to protect the drug items and cash.

he would consider giving the jury a limiting instructing if the defense wanted one. During the trial the district court gave the following limiting instruction:

> Members of the jury, as I believe I indicated to you during the jury selection process, this case is a charge only that the defendant was in possession of a firearm when he had been previously convicted of a felony. There is going to be some evidence in the case, and this is the beginning of some of that now, that does deal with drug transactions that may or may not have dealt with the defendant but are not at issue in this case. The only issue in this case is the firearm charge. The evidence is being admitted for the purposes of showing you the circumstances under which the firearm was found.

A district court judge acts within his sound discretion in admitting evidence of prior criminal or wrongful acts when the evidence is relevant to an issue in question other than defendant's character, when clear and convincing evidence exists that defendant committed the prior wrongful acts, and when potential unfair prejudice of the evidence does not substantially outweigh its probative value. *See  United States v. Simon,* 767 F.2d at 526. When drug-related evidence is "closely and integrally related" to the issue of ownership and possession of firearms, the district court does not abuse its discretion in admitting the drug-related evidence in a possession of a firearm case. *Id*. After reviewing all the evidence in this case we hold that the drug-related evidence, including the paraphernalia, was "closely and integrally related" to the issue of ownership and possession, and that the district court did not abuse its discretion in admitting this evidence.

*Sufficiency of the Evidence*

Defendant argues that his conviction must be reversed because there was insufficient evidence submitted at trial to prove that he possessed the firearm. We review de novo challenges to the sufficiency of the evidence presented at trial. *United States v. Coleman*, 584 F.3d 1121, 1125 (8th Cir. 2009). In conducting this review, we consider the evidence in the light most favorable to the jury's verdict and draw all

reasonable inferences in the Government's favor. *United States v. McAtee*, 481 F.3d 1099, 1104 (8th Cir. 2007). We do not weigh the evidence or assess the credibility of witnesses. We will reverse a conviction only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt. *United States v. Santana*, 524 F.3d 851, 853 (8th Cir. 2008).

To convict Defendant of possession of a firearm by a convicted felon under 18 U.S.C. § 922(g)(1),[4] the government had to prove beyond a reasonable doubt that (1) Defendant had previously been convicted of a crime punishable by a term of imprisonment exceeding one year; (2) Defendant knowingly possessed a firearm; and (3) the firearm has been in or has affected interstate commerce. *United States v. Maxwell*, 363 F.3d 815, 818 (8th Cir. 2004). The parties stipulated at trial to the first and third elements, so the government had to prove only that Defendant knowingly possessed a firearm.

There was evidence presented at trial that Defendant had for some period of time been staying at the home of Rachel Woodruff, where the firearm was found in a bedroom Defendant shared with Ms. Woodruff. Although Defendant maintained a separate apartment, the testimony revealed that he spent little time there, and few of his belongings were found in that apartment. The Defendant was present at Ms. Woodruff's house when the search warrant was executed. The bedroom Defendant shared with Ms. Woodruff was separated with female possessions on the north side of the room and male items on the south side of the room. The firearm was discovered between the mattress and box springs on the south side of the bedroom. Cash was likewise located between the mattress and box springs in the apartment kept by Defendant. Videotapes of a very personal nature involving the Defendant and Ms. Woodruff as well as Defendant and another woman were found on the south side of

---

[4]18 U.S.C. § 922(g)(1) makes it unlawful for any person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" to possess a firearm.

the bedroom. The firearm which was discovered between the mattress and box springs at the upper left corner of the bed, was accessible to a person lying on that side of the bed. Defendant's wallet and other personal items were found on the table next to this part of the bed.

Items consistent with drug trafficking were found in the bedroom and other parts of the house. When the officers gained entry to execute the search warrant, Ms. Woodruff was in the upstairs bathroom attempting to flush marijuana down the toilet, and Defendant was at the top of the stairs between Ms. Woodruff and the officers. Additionally, the Government presented evidence that the .40 caliber handgun had been purchased in Muncie, Indiana, a city near Indianapolis, Indiana. Evidence was also presented that Defendant's brother and associate, John Wallace, had a driver's license with an Indianapolis address.

Defendant points out that the .40 caliber handgun was in the possession of an Indiana firearms dealer 280 days before being found under the mattress in Marshalltown, and that the Government was unable to present evidence showing the last time Wallace was in Indiana or Marshalltown. Defendant further submits that the evidence was insufficient to convict because Defendant's fingerprints were not found on the handgun, there was no forensic evidence presented to link Defendant to the handgun and no witness testified to seeing Defendant with the handgun. Constructive possession of a firearm, however, may be established with circumstantial evidence. *See United States v. Byas*, 581 F.3d 723 (8th Cir. 2009). Considering the evidence in the light most favorable to the jury's verdict, we conclude that a reasonable jury could have found Defendant guilty beyond a reasonable doubt based on the evidence presented at trial.

*Correctness of Advisory Guideline Range and Reasonableness of the Sentence*

Defendant maintains that the district court erred in sentencing him by enhancing the Base Offense Level pursuant to U.S.S.G. §2K2.1(b)(6). This Guideline provides for a four-level enhancement "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense." The Sentencing Guidelines define "another felony offense" as "any federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." U.S.S.G. § 2K2.1 cmt. n. 14(C). We review de novo the "legal conclusions a district court reaches in order to apply an enhancement for purposes of calculating an advisory guidelines range ... while the factual findings underpinning the enhancement are reviewed for clear error." *United States v. Septon*, 557 F.3d 934, 936 (8th Cir. 2009).

Defendant relies on *United States v. Smith*, 535 F.3d 883 (8th Cir. 2008), a case where the U.S.S.G. §2K2.1(b)(6) enhancement was held to be not warranted, as support for his position that the nexus was lacking between the handgun found under the mattress and the trafficking of marijuana. The facts in *Smith*, however, are significantly different from those in the case at hand. In *Smith,* a search of the defendant's home led to the discovery of a rifle, shotgun, shotgun barrel and ammunition, as well as a methamphetamine pipe, a baggie containing methamphetamine residue and marijuana. Smith admitted to using the rifle to kill coyotes and Smith's wife admitted owning the marijuana. At the time the district court judge imposed the enhancement under U.S.S.G. §2K2.1(b)(6) he stated that it was clear that Smith had been using marijuana and that the use of drugs in the presence of firearms justified the enhancement. 535 F.3d at 884-85. The enhancement was found not warranted in part because there was no evidence of a temporal link between the firearms and a greater amount of methamphetamine than just the residue. 535 F.3d at 886.

In *United States v. Blankenship,* 552 F.3d 703, 704-05 (8th Cir. 2009), a panel of this Court explained as follows the change in the application of the U.S.S.G. §2K2.1(b)(6) enhancement:

> Application Note 14(A) to § 2K2.1(b)(6) provides that the "in connection with" adjustment will apply "if the firearm ... facilitated, or had the potential of facilitating, another felony offense." U.S.S.G. § 2K2.1(b)(6) cmt. n.14(A). This application note was added in 2006. Prior to that time, the guidelines were silent on the definition of "in connection with," and our case law routinely upheld the adjustment when weapons and drugs were in the same vicinity, regardless of whether the underlying drug offense was for possession or trafficking. *e.g., United States v. Linson,* 276 F.3d 1017, 1018-19 (8th Cir. 2002). However, with the addition of Application Note 14, the Sentencing Commission decided to make a distinction between the factual circumstances of when the other felony was a drug trafficking offense, or alternatively, a simple drug possession offense. If the felony is for drug trafficking, Application Note 14(B) mandates application of the adjustment if guns and drugs are in the same location. U.S.S.G. § 2K2.1(b)(6) cmt. n.14(B). *See United States v. Fuentes Torres*, 529 F.3d 825, 827 (8th Cir. 2008) (discussing the new application notes to U.S.S.G. § 2K2.1(b)(6) and noting that the Commission treated drug possession and trafficking offenses differently).

> If the underlying drug offense is for simple possession, the district court may still apply the adjustment, but only after making a finding that the firearm facilitated the drug offense. *Id.* at 827-28 n. 2 (holding that when the "in connection with" offense is a drug possession offense, the district court "must make the 'in connection with' finding, applying the 'facilitate' standard" from application note 14(A) to guideline § 2K2.1(b)(6)) (emphasis added). In other words, when the defendant subject to a 2K2.1(b)(6) adjustment possesses a "user" amount of drugs and is not a trafficker, instead of automatically applying the adjustment when both drugs and weapons are involved in the offense, the district court must affirmatively make a finding that the weapon or weapons facilitated the drug offense before applying the adjustment.

-14-

The evidence in the case at hand does not show that Defendant possessed only a "user" amount of drugs. Instead, the evidence shows that Defendant was in possession of a large amount of marijuana, packaging material and scales. The evidence presented at trial supports a finding that Defendant was a trafficker in drugs. The district court at the sentencing hearing announced and explained his finding that the handgun was possessed in connection with the distribution of marijuana. The factual findings of the district court were not clearly erroneous and the U.S.S.G. §2K2.1(b)(6) enhancement was warranted.

Defendant also argues that he was entitled to a downward departure pursuant to U.S.S.G. § 4A1.3(b)(1) because a criminal history category of III over-represents his risk of recidivism. We have no authority, however, to review the district court's denial of Defendant's request for a downward departure because Defendant does not argue that the district court had an unconstitutional motive in denying his request and because the district court recognized that it had the authority to depart downward. *See United States v. Anderson*, 570 F.3d 1025, 1034 (8th Cir. 2009).

Defendant also contends that the district court, in declining to sentence Defendant below the advisory guidelines, did not properly apply the factors in 18 U.S.C. § 3553(a).[5] Defendant contends that the district court failed to properly

---

[5]18 U.S.C. § 3553(a) provides:
   The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--
   (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
   (2) the need for the sentence imposed--
        (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
        (B) to afford adequate deterrence to criminal conduct;
        (C) to protect the public from further crimes of the defendant; and

consider: 1. that Defendant had a new-born child who will suffer from Defendant's incarceration; 2. that Defendant grew up without a father during his teenage years; 3. that Defendant benefitted from a substance abuse program in 2007; 4. that

---

   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for--

   (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--

      (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

      (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

   (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

(5) any pertinent policy statement--

   (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

   (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

Defendant had a good work history and was supported by his most recent employer; 5. that Defendant displayed good conduct while on release pending disposition of this case; and 6. that Defendant has demonstrated that he will not commit further offenses.

Section 3553 requires that a sentence be "not greater than necessary." In addition, in *Gall v. United States* the Supreme Court emphasized the requirement that "'the sentencing judge consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue.'" 552 U.S. 38, 52, 128 S. Ct. 586, 598 (2007)(quoting *Koon v. United States*, 518 U.S. 81, 113 (1996)). *Gall* sets forth the procedure the district court should follow in sentencing. After correctly calculating the advisory Guidelines range and "giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." 552 U.S. at 49-50. The district court "must make an individualized assessment based on the facts presented, ... [and] must adequately explain the chosen sentence to allow for meaningful appellate review." *Id.* at 50. In explaining the chosen sentence and analyzing the relevant § 3553(a) factors, "a district court is not required to provide 'a full opinion in every case,' but must 'set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision making authority.'" *United States v. Robinson*, 516 F.3d 716, 718 (8th Cir. 2008) (quoting *Rita v. United States*, 551 U.S. 338, 356, 127 S. Ct. 2456, 2468, 168 L. Ed.2d 203 (2007)). If a district court judge's discretionary decision in a case accords with the sentence the Sentencing Commission deems appropriate "in the mine run of cases," it is likely that the sentence is reasonable. *United States v. Harris*, 493 F.3d 928, 932 (8th Cir. 2007).

In the case at hand the district court followed the proper sentencing procedure. The sentencing transcript establishes that the district court thoroughly considered the 3553(a) factors and was aware of his ability to vary from the Sentencing Guidelines

but chose not to for reasons carefully explained on the record. Nothing in the record persuades us that the district court arrived at an unreasonable sentence in Defendant's case.

***

For the reasons set forth in this opinion, the judgment of the district court is affirmed.

_____