**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**May 3, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JASON MYERS JORDAN,

Defendant - Appellant.

No. 05-5093

(N.D. Oklahoma)

(D.C. No. 04-CR-197-P)

**ORDER AND JUDGMENT**[*]

Before **TACHA,** Chief Circuit Judge, **ANDERSON** and **BALDOCK**, Circuit
Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination

of this appeal.  See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is

therefore ordered submitted without oral argument.

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Jason Myers Jordan pled guilty to two counts of possession of a firearm after former conviction of a felony, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). He was sentenced to 120 months' imprisonment on each count, to be served concurrently, followed by three years of supervised release. Jordan was also fined $5,000. He appeals his sentence, which we affirm.

## BACKGROUND

On October 21, 2004, police officers in Tulsa, Oklahoma, were executing a search warrant at a residence when Jordan arrived and parked his pick-up truck containing his five-year-old son in front of the residence. At that time, Jordan was not a target of any police investigation, and the officers did not suspect he was involved in any drug activity at the residence they were searching. An officer talked to Jordan and obtained consent to search his truck. Jordan then fled the scene on foot.

The officers found a loaded .38 caliber firearm on the center console of Jordan's truck. Inside a black bag officers found a set of scales, a small spoon, empty baggies, and cards on which were written what appeared to be notations of drug transactions. Officers also found a plastic bindle containing "cut"[1] inside

---

[1] "Cut" is a white powdery substance commonly used by drug dealers to increase the weight, and hence the value, of drugs.

the center console. They additionally found a metal tin containing rolling papers, five empty plastic bindles, and eleven blue pills. The officers were unable to apprehend Jordan. This incident formed the basis for count one of the indictment.

On November 15, 2004, Tulsa police officers observed Jordan driving a Mercury Mystique. After parking the car in a lot, Jordan and his passenger exited the car. Jordan subsequently attempted to flee, presumably upon seeing the police, but was arrested shortly thereafter. When Officer Todd Taylor searched the Mercury Mystique, he found an SKS rifle in the front passenger seat and another in the trunk.[2] He observed a .45 caliber handgun in plain view on the center console, and a .357 magnum gun lodged between the passenger seat and the center console. A black bag behind the driver's seat contained thirty-four empty baggies, two sets of digital scales, and a baggy containing "cut." There was methamphetamine residue on the scales. The officers also found two rolls of film which, when developed, yielded three photographs of Jordan: one depicting Jordan using a glass smoking device typical of methamphetamine use; one depicting him holding a wad of twenty dollar bills; and one depicting him with a weapon on his lap. Finally, officers found a notebook in the car's back seat,

_____

[2]There is no challenge in this appeal to the validity of either search of the vehicles in which Jordan was riding. As indicated, Jordan only challenges his sentence.

containing what appeared to be drug notations. This incident formed the basis for count two of the indictment.

In calculating Jordan's sentence under the United States Sentencing Commission, Guidelines Manual ("USSG") (Nov. 2004), the presentence report ("PSR") prepared by the probation office applied USSG §2K2.1(b)(5), which authorizes a four-level increase in the offense level "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense." Jordan objected to the enhancement under §2K2.1(b)(5), arguing there was insufficient evidence to show that he possessed a controlled substance or was involved in the distribution of a controlled substance.

The district court held a sentencing hearing and the government presented evidence in support of the enhancement. The officers involved in the October and November incidents with Jordan testified as to what happened. The district court overruled Jordan's objection to the enhancement, finding:

> While the trace amount of drug residue found on the digital scales only supports a finding that the Defendant was engaged in the felony offense of Possession of a Controlled Substance at the time he was arrested on November 15th, 2004, the evidence presented by the Government in this case overwhelmingly supports the Court's finding by clear and convincing evidence that the Defendant had, shortly prior to his arrest on November 15th, 2004 and prior to the search of his vehicle on October 21st, 2004, been engaged in the felony offense of Distribution of Controlled Substances. Specifically, during the search of Defendant's vehicle on both occasions, officers recovered numerous plastic baggies and digital scales, which

-4-

experienced narcotic officers testified were used by drug dealers to weigh and repackage their products. . . .

Further, on both occasions, officers recovered notations which they believe were consistent with drug notations[,] [i]n particular, . . . dollar amounts . . . consistent with . . . the sale of . . . one eighth ounce of drugs, and . . . consistent with the Defendant paying two hundred to two hundred and thirty dollars for an eight ball.

Additionally, in the search of Defendant's vehicle on November 15th, 2004, the Defendant was in possession of a powdery substance which was consistent with . . . cut . . . . Testimony also indicated the purpose of firearms and drug distribution crimes would be to intimidate those not paying or to provide protection to the drug dealers' would-be thieves.

Finally, undeveloped film which was seized from the Defendant's vehicle on November 15th, 2004, was developed, [producing] three photographs . . . . One of those photographs depicts the Defendant with a wad of twenty dollar bills, even though the Defendant advised the probation officer compiling his [PSR] that he had not had a steady job since July of 2004. Another photograph depicts the Defendant smoking a meth pipe, and the third photograph depicts Defendant laying on a couch holding his weapon on his lap.

Am. Tr. of Sentencing Hr'g at 3-4, R. Vol. VI.

Jordan argues this four-level increase was error, because the presence of methamphetamine residue only, and the failure of the government to charge him with possession of methamphetamine, prevents such possession from constituting the "[]other felony offense," and, further, there is insufficient evidence supporting the conclusion that Jordan possessed a firearm in connection with drug distribution, the "[]other felony offense." Jordan thus argues his sentence should be vacated and his case should be remanded for resentencing.

## DISCUSSION

Following the Supreme Court's decision in <u>United States v. Booker</u>, 543 U.S. 220 (2005), the Guidelines are advisory. However, because sentencing courts are still required to "consider" the properly-calculated Guidelines range, <u>United States v. Gonzalez-Huerta</u>, 403 F.3d 727, 748-49 (10th Cir.) (en banc), <u>cert. denied</u>, 126 S. Ct. 495 (2005), we continue to review the sentencing court's factual findings for clear error and its legal determinations de novo. <u>United States v. Serrata</u>, 425 F.3d 886, 906 (10th Cir. 2005). We review for reasonableness the ultimate sentence imposed. <u>Booker</u>, 543 U.S. at 261-62 (Breyer, J.). "[A] sentence that is properly calculated under the Guidelines is entitled to a rebuttable presumption of reasonableness." <u>United States v. Kristl</u>, 437 F.3d 1050, 1054 (10th Cir. 2006) (internal quotation omitted).

We have recognized that, "[e]xcept for its plain language, §2K2.1(b)(5) provides little guidance regarding the nexus required between firearm possession and the felony offense." <u>United States v. Brown</u>, 314 F.3d 1216, 1222 (10th Cir. 2003). While we have noted that judicial interpretations of 18 U.S.C. § 924(c)'s "during and in relation to" requirement provide "some guidance" in construing §2K2.1(b)(5)'s "in connection with" requirement, <u>United States v. Gomez-Arrellano</u>, 5 F.3d 464, 466 (10th Cir. 1993), we have acknowledged that cases interpreting § 924(c) do not control the interpretation of §2K2.1(b)(5). <u>Brown</u>,

314 F.3d at 1222.  Accordingly, we have generally concluded that "if the weapon facilitated or had the potential to facilitate the underlying felony, then enhancement under §2K2.1(b)(5) is appropriate."  Id. (further quotation omitted).  An enhancement under §2K2.1(b)(5) is inappropriate if "possession of the weapon is coincidental or entirely unrelated to the offense."  Id.; see also United States v. Taylor, 413 F.3d 1146, 1154 (10th Cir. 2005).  We have further observed that "[h]andguns are widely recognized as a tool of the drug dealers trade.  Accordingly, a weapon's proximity to narcotics may be sufficient to provide the nexus necessary to enhance a defendant's sentence under §2K2.1(b)(5)."  United States v. Bunner, 134 F.3d 1000, 1006 (10th Cir. 1998) (citation omitted).

After carefully reviewing the record in this case, we conclude that the district court's finding that the weapons in this case were possessed "in connection with" the offense of drug distribution is not clearly erroneous.  Indeed, as the district court's discussion of its denial of Jordan's objection to the §2K2.1(b)(5) enhancement indicates, the facts and circumstances amply support the conclusion that the enhancement applies.  We accordingly find no error in the enhancement of Jordan's sentence under §2K2.1(b)(5).[3]

---

[3]Jordan makes no other argument concerning his sentence, so we need not address its reasonableness from any other perspective.

**CONCLUSION**

For the foregoing reasons, Jordan's sentence is AFFIRMED.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge